THE STATE, EX REL. ALFRED HUGG, PROSECUTOR, v. MAHLON F. IVINS, COUNTY COLLECTOR OF CAMDEN COUNTY.

1. After the members of a board of chosen freeholders have been judicially adjudged usurpers upon an information in the nature of a *quo warranto*, and punishment inflicted for such usurpation, they no longer can conduct the business of the municipal affairs of the county as a *de facto* board of chosen freeholders, and the county collector. is not bound to pay out the county moneys to counsel for his services in the defence of the title of the members of the board to their positions, upon an order or resolution of such board passed after the members thereof have been so adjudged usurpers.

2. The board of chosen freeholders have no power to burden the public with the expenses of the defence of the personal title of the members of the board to their positions. The expenses for counsel and attorneys' fees in such an event do not become a public charge, and the payment thereof is not comprehended within the powers and duties of the board.

3. Where the right is doubtful or another legal remedy exists, a writ of *mandamus* will not be granted to enforce the right, or take the place of the other remedy. In order to invoke the power of the writ of *mandamus* the right must be clear.

On rule to show cause why a peremptory writ of *mandamus* should not issue.

Argued at February Term, 1896, before Justices LIPPINCOTT and LUDLOW.

*Alfred Hugg, pro se.*

For the defendant, *Henry S. Scovel.*

The opinion of the court was delivered by

LIPPINCOTT, J. The relator was appointed solicitor of the board of chosen freeholders of the county of Camden for the year 1894, by the board of that year.

At the time of the election of the relator, the members of the board were clearly usurpers of the positions which they

then held.   The Supreme Court at the November Term, 1894, in the case of *Davis* v. *Davis*, 28 *Vroom* 203, on information in the nature of *quo warranto*, determined that the members of the board were usurpers in office, and not entitled to the positions they held, and not entitled to the rights and privileges conferred, or to perform the duties imposed upon the board of chosen freeholders, and, therefore, judgment of ouster passed against them.

The court in its opinion delivered by the Chief Justice, said that " in the present case the defendants stand before us as self-confessed wrongdoers.   They are usurpers of a public office, and by their misconduct have occasioned disorder and confusion in the affairs of local government.   Their conduct has been so plainly illegal that it is not possible to believe that, in retaining their positions, they had the faintest belief that they were right in so doing.   It is to be remembered that such malfeasance as this is an indictable offence, in both those who advise it and in those who execute it."   The court not only ordered judgment of ouster, but also that a fine of $200 be laid on each of the members of this board for their malfeasance.   It is quite needless to go into any discussion of the merits of their attempt to hold their positions.   They are discussed and decided in the case to which reference has been made.   See, also, *Davis* v. *Davis*, 28 *Vroom* 80.

This judgment was passed and this fine imposed on November 13th, 1894.   On the 19th day of November, 1894, this same board passed a resolution, in due form, " that the county collector be and he is hereby ordered to pay to Alfred Hugg, solicitor of this board, five hundred dollars for his professional services rendered in the case of The State, ex rel. John V. Davis and others, *v.* William H. Davis and others, on information in the nature of *quo warranto*."

By virtue of the force of this resolution, a *mandamus* is applied for to compel the county collector, the defendant in this case, to pay to the relator, out of the county funds in his hands, the sum of $500.

It will be noticed that the amount ordered paid is not for professional services and expenses rendered to the board in their conduct of the county governmental affairs, or to the members in the discharge of their official duties, but for services as counsel of the members of this usurping board, in their separate or collective attempt to retain the positions to which they were not at all entitled. In fact, they retained their offices without the slightest color of authority. The relator did not present this resolution to the county collector and demand the sum therein ordered paid until nearly a year after the resolution was passed.

The conclusion reached is that the rule to show cause must be discharged and *mandamus* denied.

The resolution established no liability on the part of the county whatever. The board, at the time of its passage, was neither a *de facto* nor a *de jure* board. They had been declared usurpers, and were without color of authority. Any same number of private citizens might have assumed to have met at the place of meeting of the board and have passed this resolution with just as much effect in its binding force against the county, or upon the county collector, whose duty it is under the statute to pay out the moneys of the county upon the order of the board. He certainly exercised a privilege as well as a duty to ascertain whether the resolution emanated from the board, and upon ascertaining that it had been judicially determined that no such board was in existence, he was justified in ignoring the order made upon him.

The resolution itself, upon its face, determines its invalidity, and it was notice to the county collector that the board had attempted to burden the public with a payment which it was not within the powers of the board to impose. It is nowhere within the statutory power of the board to burden the public with the expense of personal defence of the members thereof in any investigation made against them to determine whether their conduct is fraudulent or whether they be usurpers. Especially is this so when it shall have been determined, before the attempt to so burden the public, that their personal

conduct has been fraudulent, and that they are usurpers in fact as well as in law. The defence of their own title, or their own personal defence, in an investigation, cannot be made an imposition upon the public. *Baldwin* v. *Board of Freeholders of Middlesex County*, 29 *Vroom* 285.

But, conceding that the board was legally organized, and conceding that the services had been performed in defending the title of the members to their positions, still *mandamus* would not be the proper remedy to enforce the claim, although the resolution had been adopted ordering the payment. *Mandamus* is not the proper remedy, in the absence of statutory provision, to collect a debt against a municipal corporation or its officers until the claim therefor has been adjudicated upon, and has been merged into a judgment at law. The doubts in relation to this alleged indebtedness should have been solved by an action at law.

It is now well established that a writ of *mandamus* will only be directed to enforce a clear legal right. If there exists a fair doubt respecting the right of the public or of the relator to *mandamus*, some other form of remedy must be sought. The right will be considered, but the right, to be enforced, must be clearly one to which the relator is entitled, and if there be another specific legal remedy it must be invoked. *Dill. Mun. Corp.* 821–830; *State* v. *Warren, &c.,* 3 *Vroom* 439; *Nicholson Pavement Co.* v. *Mayor of Newark,* 6 *Id.* 396; *Hugg* v. *Camden,* 10 *Id.* 620, 624.

The application is denied, with costs.